UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>    Plaintiff,<br><br>  v.<br><br>E.D.D. INVESTMENT CO., *et al.*,<br><br>    Defendants. | Case No. CV 19-9447-DMG (MRWx)<br><br>**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [35]** |

  This matter is before the Court on Plaintiff Brian Whitaker's Motion for Summary Judgement ("MSJ"). [Doc. # 35.] The motion is fully briefed. [Doc. ## 38-39.] For the reasons set forth below, the Court **GRANTS** Plaintiff's MSJ.

## I.

## PROCEDURAL BACKGROUND

  On November 1, 2019, Plaintiff filed the Complaint in this action against Defendants E.D.D. Investment Co. and RVZ LLC, alleging violations of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act"). [Doc. # 1.] On November 25, 2019, Defendants filed a motion to dismiss the Unruh Act claim, which the Court granted on July 6, 2020, declining to exercise supplemental jurisdiction

over the Unruh Act claim.  [Doc. ## 7, 19.]  Defendants filed a motion to dismiss the ADA claim on August 20, 2020, which the Court denied.  [Doc. ## 24, 34.]

On July 7, 2021, Plaintiff filed the instant MSJ.

## II.

## FACTUAL BACKGROUND

Defendant E.D.D. Investment Co. is the owner of the real property at 4612 E. 2nd Street in Long Beach, California, where the restaurant Z Pizza is located.  Pl.'s Statement of Uncontroverted Facts ("SUF") at ¶¶ 2, 4 [Doc. # 38-1].[1]  Defendant RVZ LLC is the owner of Z Pizza.  *Id.* at ¶ 3.  On August 5, 2019, Plaintiff, who suffers from a C-4 spinal cord injury which substantially limits his ability to walk and uses a wheelchair for mobility, visited Z Pizza.  *Id.* at ¶¶ 1, 6.  He observed that a dining table outside the restaurant did not have enough toe clearance for him to use in his wheelchair without great discomfort or difficulty.  *Id.* at ¶¶ 7-9.  He also noticed a steep ramp leading up to the entrance of the restaurant which terminated at the door with no level landing.  To enter, he would have had to keep his wheelchair steady on the incline with one hand while opening the door with his other, which would have been difficult for him.  *Id.* at ¶ 10.  Due to the lack of accessible entrance or dining tables, he left without eating.  *Id.* at ¶ 11.

Plaintiff's investigator Evens Louis attests that he inspected Z Pizza on October 30, 2019.  *Id.* at ¶ 12.  Louis found that the toe clearance of the outside dining table was approximately 3 inches.  *Id.* at ¶ 13.  Louis went back for a second inspection on November 4, 2019 and measured the slope of the ramp leading to the entrance at a grade of approximately 5.9% and 6.3%.  *Id.* at ¶¶ 14–15.  Plaintiff's accessibility expert, Janis Kent, then inspected the restaurant on December 28, 2020.  *Id.* at ¶ 16.  She observed that all of the tables but one had a cross base that would not allow for toe clearance, and the one with a "sled base" had 29 to 29.5 inches of width between the legs.  *Id.* at ¶ 17; Kent Decl., Ex.

---

[1] The Court cites to Defendants' Statement of Genuine Disputes, which includes Plaintiff's Statement of Undisputed Facts and Defendants' responses to them.

7 (Kent Report) at 5[2] [Doc. # 35-9]. Kent also measured an 8% slope leading to the entrance door. SUF at ¶ 19. Kent opined that to make the entrance more accessible, a "low energy door opener device" with controls on the front of the building could be installed that reduces the operating force of the door to five pounds or less and increases the closing speed of the door to five seconds or more. *Id.* at ¶¶ 20, 23. She also recommended that a 10-inch high "push plate" be installed at the bottom of the push side of the door, and that a loose floor mat inside the door be secured or removed. *Id.* at ¶¶ 22, 24. Plaintiff's construction expert, Corey Slater, estimates that the costs to install the low energy door opener and the push plate would be $2,432 and $85, respectively. *Id.* at ¶¶ 28-29.

Plaintiff attests that he is currently deterred from visiting Z Pizza due to the outdoor dining tables and entrance path of travel, but that he wishes to return once it is accessible to wheelchair users. *Id.* at ¶¶ 31-32.

### III.
### LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to

---

[2] All page references herein are to the page numbers inserted by the CM/ECF system.

-3-

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV.
## DISCUSSION

Plaintiff seeks summary judgment on his sole remaining claim under Title III of the ADA. To prevail on a Title III ADA discrimination claim, a plaintiff must show: he or she is disabled within the meaning of the ADA; the defendant owns, leases, or operates a place of public accommodation; the existing facility at the defendant's place of business or property presents an architectural barrier; and the removal of the barrier is readily achievable. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007–08 (C.D. Cal. 2014). "The enforcement provisions of Title III provide only for injunctive relief. Damages are not available to individuals." *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1136 (9th Cir. 2002).

**A.   Plaintiff is Disabled and Defendants Own, Lease, or Operate a Place of Public Accommodation**

There is no dispute that Plaintiff is disabled and uses a wheelchair for mobility. It is also undisputed that, at all relevant times, Defendants are the owners and operators of the Z Pizza. Likewise, there is no dispute that Z Pizza is a place of public accommodation within the meaning of the ADA. SUF at ¶ 3; *see also* 42 U.S.C. § 12181(7)(B) (a restaurant is considered a public accommodation).

The first two elements are thus satisfied.

**B.   Z Pizza Presents Architectural Barriers**

It is undisputed that Z Pizza has presented, and continues to present, at least one architectural barrier within the meaning of the ADA. Defendants concede that the slope

leading to the entrance of the restaurant is excessive. Opp. at 2; *see also* 36 C.F.R. Pt. 1191, App. D § 402.2 (requiring walking surfaces with a slope not steeper than 5%).

Defendants purport to dispute that the dining tables are non-compliant. But their only evidence is the conclusory statement from their expert, Christy Kim, that "a compliant accessible dining surface was provided." Kim Decl. ¶ 5 [Doc. # 38-2]. Kim does not provide any measurements or specific descriptions of the dining tables. Her legal conclusion alone is not admissible to create a genuine dispute of fact.

Where a restaurant provides dining surfaces, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with the ADA Standards. Dining surfaces must have a maximum 25 inches and minimum 17 inches in height of toe clearance, and 30 inches minimum in width. 36 C.F.R. Pt. 1191, App. D § 306.2. Kent observed that the only table with a compliant height was only 29 to 29.5 inches in width, which is less than the required 30 inches.

Plaintiff has thus demonstrated that Z Pizza presents architectural barriers.

**C.     Removal of the Architectural Barriers at Z Pizza is Readily Achievable**

Removal of a barrier is "readily achievable" if said removal is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). In determining whether the removal is readily achievable, the Court considers four factors:

(A) the nature and cost of the action needed [ ];

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

>   (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Id.*

To meet their initial burden under the test, plaintiffs need only "plausibly show how the cost of removing the architectural barrier at issue does not exceed the benefits under the circumstances." *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020). They are not required to address each of the four factors in detail in order to satisfy this initial burden. *Id.* If the plaintiff makes such a plausible showing, the burden then shifts to the defendant to counter the plaintiff's initial showing, at which point the Court is required to weigh each factor to determine whether removal of the barrier is readily achievable or not. *Id.* at 1039. Even if complete removal of the barrier is not readily achievable, the plaintiff can still prevail if he establishes that making the facility accessible to him through "alternative methods" is readily achievable. *Id.* (citing 42 U.S.C. § 12182(b)(2)(A)(v)).

Here, Plaintiff does not ask for the entrance slope to be remedied completely, but argues that, alternatively, the restaurant can be made accessible by installing a "low energy door opener device" and push plate that will enable him to maneuver the ramp and open the door at the same time with less difficulty. His expert opines that these fixes would cost a total of $2,517. The relatively low cost of this remedy balanced against the plausible benefits it will provide is enough to satisfy Plaintiff's initial burden.

In their Opposition, Defendants argue only that leveling the entrance slope is not achievable because it abuts the city-owned sidewalk. *See* Opp. at 2; Kim Decl. ¶ 6 [Doc. # 38-2]. But Plaintiff does not ask Defendants to fix the slope itself. He instead proposes an alternative method to make the restaurant accessible, to which Defendants offer no response. Because Defendants fail to counter Plaintiff's initial showing, they have not met

their burden of creating a genuine dispute of material fact that it is readily achievable to make the entrance accessible.

As for the dining tables, Plaintiff's expert opines that it will cost $55 to move the legs on the table to a width greater than 30 inches. Slater Decl. ¶ 5. While the benefit of adding one inch of width is fairly minimal, so too is the cost. Again, Defendants fail to offer any rebuttal to Plaintiff's initial showing that widening the table is readily achievable—they only insist in conclusory fashion that the table is in fact accessible.

Accordingly, Plaintiff prevails on his ADA cause of action against Defendants as to the entrance and dining tables and may obtain requested injunctive relief regarding their remediation. *See Vogel*, 992 F. Supp. 2d at 1015.

## V.
## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's MSJ. Within one week of the date of this Order, Plaintiff shall lodge a proposed Judgment specifying the injunctive relief consistent with this Order. The August 6, 2021 hearing is **VACATED**. All scheduled dates and deadlines are also **VACATED.**

**IT IS SO ORDERED.**

DATED: August 5, 2021

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE